IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| MATTHEW CESTRA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 14-825 |
| | ) | |
| MYLAN, INC., t/d/b/a  Mylan | ) | |
| Pharmaceuticals, Inc., and MYLAN | ) | |
| PHARMACEUTICALS, INC.., | ) | United States Magistrate Judge |
| | ) | Cynthia Reed Eddy |
| Defendants. | ) | |

REPORT AND RECOMMENDATION[1]

**Cynthia Reed Eddy, United States Magistrate Judge**

I.    **RECOMMENDATION**

The issue before the court is whether the anti-retaliation provision of the False Claims Act ("FCA"), 31 U.S.C. § 3730(h)(1), applies to an employer that fired an employee after discovering that the employee was a whistleblower and relator in an ongoing *qui tam* action under the FCA against his former, unrelated employer.  Defendants Mylan, Inc. ("Mylan") and Mylan Pharmaceuticals, Inc.'s ("MPI") (collectively referred to as "Defendants") have filed a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) arguing that it does not.  For the reasons that follow, it is respectfully recommended that the motion be denied.

II.    **REPORT**

A.    **FACTUAL & PROCEDURAL BACKGROUND**

In 2010, when Plaintiff Matthew Cestra was employed by Cephalon, Inc., a company unrelated to Defendants, he filed a complaint in the United States District Court for the Southern

---

[1]    In the event that the page numbers in the parties' briefs differ from the page numbers in the ECF stamp located at the top of the page, the Court will cite to the page number in the ECF stamp.

District of New York as a relator pursuant to the FCA against Cephalon. (Am. Compl. ¶ 20, ECF No. 9). Because the complaint was originally sealed and the relator was only initially identified as John Doe, Plaintiff's identity as the relator in the case did not become a matter of public knowledge until July 10, 2013. (*Id.* at ¶¶ 21-22).

Plaintiff began working for Defendants in 2011 while his FCA suit was under seal. (*Id.* at ¶ 9). During his time working for Defendants, Plaintiff was promoted from Senior Director of Marketing to Vice President of Marketing. (*Id.* at ¶ 17). Additionally, in performance reviews during this time period, he received a rating of "exceeds expectations." (*Id.* at ¶ 16). "On or about February 10, 2014, [Plaintiff] was identified as a Whistleblower on the Mylan page of Café Pharma, a website for the pharmaceutical industry, and his involvement in the action against Cepahlon was publicized." (*Id.* at ¶ 23). That same day, Plaintiff e-mailed his direct supervisors "alerting them to the Café Pharma posting, and assuring them that he was not engaged in any form of 'whistle blowing' against Mylan." (*Id.* at ¶ 24). As a result of this e-mail, Plaintiff was "chastised" by one of his supervisors, Joe Duda, President of MPI. (*Id.* at ¶ 25). Duda told Plaintiff not to send him any future emails or text messages, stating that he "did not want to get 'embroiled in a deposition.'" (*Id.*).

During the remainder of February and during March 2014, Plaintiff made multiple attempts to schedule meetings with another supervisor, Debra O'Brien, Global Marketing Chief Officer of Mylan, but was unsuccessful each time. (*Id.* at ¶ 27). O'Brien "would either cancel, reschedule or just not show up for any meetings she scheduled with [Plaintiff]." (*Id.*). O'Brien also began treating Plaintiff "in a hostile manner, yelling, screaming and cursing at him in front of others, which she did not do prior to [Plaintiff] sending the email about the Café Pharma post that he was the whistleblower." (*Id.* at ¶ 29).

On May 8, 2014, Plaintiff was "invited" into a meeting with O'Brien, Carrie Ortsey, Vice President of Human Resources for Mylan North America, and Brian Roman, Global Chief Compliance Officer of Mylan. (*Id.* at ¶ 30). Plaintiff was questioned about statements he made in a previous meeting in connection with FDA approval, and a "sensitive issue" relating to an agreement between the company that developed a device for Defendants and a third-party pharmaceutical company. (*Id.* at ¶¶ 32-37). Plaintiff clarified and explained his statements in the meeting, but O'Brien immediately fired him, claiming that there were issues with his performance "over the last several weeks." (*Id.* at ¶¶ 37-38). Plaintiff contends that his performance was no different "the last several weeks" than it was when he evaluated as "exceeds expectations," and that he was fired because he was recently identified as a whistleblower. (*Id.* at 37, 39, 42-46).

Plaintiff initiated this action on June 24, 2014 (ECF No. 1) and Defendants filed a motion to dismiss on August 28, 2014 (ECF No. 5). In accordance with Rule 15(a)(1)(B) of the Federal Rules of Civil Procedure, Plaintiff amended his complaint on September 5, 2014 (ECF No. 9). He is claiming that Defendants unlawfully retaliated against him for protected activity covered by and in violation of 31 U.S.C. § 3730(h) of the FCA. On September 29, 2014, Defendants filed the pending motion to dismiss the amended complaint (ECF No. 16) and brief in support thereof (ECF No. 17). In the alternative, Defendants request that certain allegations from the second amended complaint be stricken. (*Id.*). Plaintiff responded to Defendants' motion on October 7, 2014, to which Defendants replied on October 21, 2014. (ECF Nos. 20, 21).

On March 25, 2015, the court entered a text-only Order for Supplemental Briefing directing the parties to a recent appellate decision in the Eighth Circuit, *Townsend v. Bayer Corp.*, 774 F.3d 446 (8th Cir. Dec. 17, 2014), *reh'g denied* (Jan. 27, 2015), and allowing them to

argue its applicability because the decision was rendered after their briefs were submitted, as well as allowing the parties to argue the applicability of any other relevant case(s) decided after their briefs were submitted.  (ECF No. 24).  Both parties submitted their supplemental briefs on April 2, 2015.  (ECF Nos. 25-26).  Accordingly, the matter has been fully briefed and is ripe for disposition

## II.    STANDARD OF REVIEW

### A.  Rule 12(b)(6)

Generally, the heightened and more rigorous pleading standard set forth in Rule 9(b) is applicable to *qui tam* actions brought under the FCA.  *United States ex rel. Wilkins v. United Health Group*, 659 F.3d 295, 301 n. 9 (3d Cir. 2011) (citing *United States ex rel. LaCorte v. SmithKline Beecham Clinical Labs*, 149 F.3d 227, 234 (3d Cir. 1998)).  The court of appeals recently announced in *Foglia v. Rental Ventures Mgmt., LLC*, 754 F.3d 153 (3d Cir. 2014) that in order for a plaintiff to fulfill the "particularity" requirement of Rule 9(b) in an FCA claim, "it is sufficient for a plaintiff to allege 'particular details of a scheme to submit false claims paired with reliable indicia that lead to a strong inference that claims were actually submitted."  754 F.3d at 156 (citations omitted).

However, a plaintiff's personal claims brought pursuant to the anti-retaliation provision of the FCA under § 3730(h) are governed by the less onerous notice-pleading standard prescribed by Rule 8.  *See  U.S. ex rel. Portilla v. Riverview Post Acute Care Ctr.*, 2014 WL 1293882, *6 (D.N.J. 2014) (collecting cases and noting that while the Third Circuit has not addressed the issue, "all other federal circuit courts of appeal that have faced this issue have reached the conclusion that 31 U.S.C. § 3730(h) claims need only meet the Rule 8(a) standard.") (internal marks and alterations omitted) (quoting *Thomas v. ITT Educ. Servs., Inc.,* 2011 WL

3490081, *3 (E.D.La. 2011)). Therefore, because Plaintiff's amended complaint consists only of a single count alleging violation of § 3730(h), the entire pleading is governed by Rule 8(a).

Recently, the United States Court of Appeals for the Third Circuit aptly summarized this standard as follows:

> Under the "notice pleading" standard embodied in Rule 8 of the Federal Rules of Civil Procedure, a plaintiff must come forward with "a short and plain statement of the claim showing that the pleader is entitled to relief." As explicated in *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), a claimant must state a "plausible" claim for relief, and "[a] claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Although "[f]actual allegations must be enough to raise a right to relief above the speculative level," *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007), a plaintiff "need only put forth allegations that raise a reasonable expectation that discovery will reveal evidence of the necessary element." *Fowler* [*v. UPMC Shadyside*, 578 F.3d 203, 213 (3d Cir. 2009)] (quotation marks and citations omitted); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 117–18 (3d Cir.2013).

*Thompson v. Real Estate Mortg. Network*, 748 F.3d 142, 147 (3d Cir. 2014). Additionally, while "[t]he District Court must accept the complaint's well-pleaded facts as true, [it] may disregard any legal conclusions." *Fowler*, 578 F.3d at 210. (citing *Iqbal*, 556 U.S. at 663). Consequently, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

In addition to the complaint itself, the Court may consider "exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick,* 605 F.3d 223, 230 (3d Cir. 2010) (citing *Pension Benefit Guar. Corp. v. White Consol. Inds., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993)).

B. Rule 12(f)

Rule 12(f) authorizes a court to strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). "Motions to strike are highly disfavored." *Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, 629 F.Supp.2d 416, 425 (D.N.J. 2009). In a situation where a defendant seeks to strike individual allegations from a complaint, the court will deny the motion "unless the moving party shows that 'the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" *Id.* (citations omitted). "'When faced with allegations that could possibly serve to achieve a better understanding of plaintiff's claims or perform any useful purpose in promoting the just disposition of the litigation, courts generally deny such motions to strike.'" *Id.* (citations omitted).

## III.   DISCUSSION

The anti-retaliation provision of the FCA, "Section 3730(h), added in 1986, was designed to protect persons who assist the discovery and prosecution of fraud and thus to improve the federal government's prospects of deterring and redressing crime." *U.S. ex rel. Schweizer v. Oce N.V.*, 677 F.3d 1228, 1237 (D.C.Cir.2012) (internal citations and quotation marks omitted). Since its inception in 1986, this anti-retaliation provision has been amended multiple times,[2] most recently in the Fraud Enforcement Recovery Act of 2009 ("FERA"), Pub. L. No. 111-21, 123 Stat. 1617 (May 20, 2009) and in the Dodd-Frank Wall Street Reform and

_____

[2]     When enacted, § 3730(h) originally provided:

Any employee who is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment by his or her employer because of lawful acts done by the employee on behalf of the employee or others in furtherance of an action under this section, including investigation for, initiation of, testimony for, or assistance in an action filed or to be filed under this section, shall be entitled to all relief necessary to make the employee whole.

31 U.S.C. § 3730(h) (prior to 2009 FERA amendments);

Consumer Protection Act ("Dodd-Frank Act"), Pub. L. No. 111-203, § 1079B, 124 Stat. 1376 (July 21, 2010). Prior to these amendments, courts uniformly recognized Congress' intent for courts to broadly construe § 3730(h). *See, e.g., Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176, 186 (3d Cir. 2001); *McKenzie v. BellSouth Telecomm., Inc.*, 219 F.3d 508, 514 (6th Cir. 2000) (same); *United States ex rel. Yesudian v. Howard Univ.*, 153 F.3d 731, 741 (D.C. Cir. 1998). Nonetheless, Congress amended § 3730(h) to further expand the scope of plaintiffs and to expand the scope of protected activity.[3] *See Lampenfeld v. Pyramid Healthcare, Inc.*, 2015 WL 926154, *4 (M.D.Pa. 2015); *United States ex rel. Black v. American Society for Engineering Education*, 2014 WL 1765337, *5 (E.D.Pa. 2014); *Aryai v. Forfeiture Support Assoc., LLC,* 25 F.Supp.3d 376 (S.D.N.Y. 2012) (citing H.R. Rep. No. 111-97, at 14 (2009)).

The current version of the anti-retaliation provision of the FCA provides:

> (1) In general.--Any employee, contractor, or agent shall be entitled to all relief necessary to make that employee, contractor, or agent whole, if that employee, contractor, or agent is discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment because of lawful acts done by the employee, contractor, agent or associated others in furtherance of an action under this section or other efforts to stop 1 or more violations of this subchapter.

31 U.S.C. § 3730(h)(1).

To date, there is no binding authority in the Third Circuit interpreting this version of § 3730(h)(1). In *Hutchins v. Wilentz, Goldman & Spitzer*, 253 F.3d 176 (3d Cir. 2001), the court of appeals interpreted the version of § 3730(h) before the 2009 FERA amendments, and set forth the following:

---

[3]     Additionally, although not relevant to this analysis, the Court notes that in the 2010 Dodd-Frank Act amendments, Congress prescribed the statute of limitations period for these actions. 31 U.S.C. § 3730(h)(3). Prior to this amendment, the statute of limitations for actions under § 3730(h) was governed by the most analogous state law statute of limitations. *See Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson*, 545 U.S. 409, 422 (2005).

A plaintiff asserting a cause of action under § 3730(h) must show (1) he engaged in "protected conduct," (i.e., acts done in furtherance of an action under § 3730) and (2) that he was discriminated against because of his "protected conduct." In proving that he was discriminated against "because of" conduct in furtherance of a False Claims Act suit, a plaintiff must show that (1) his employer had knowledge he was engaged in "protected conduct"; and (2) that his employer's retaliation was motivated, at least in part, by the employee's engaging in "protected conduct." At that point, the burden shifts to the employer to prove the employee would have been terminated even if he had not engaged in the protected conduct.

253 F.3d at 186 (citations and footnote omitted).

In explaining what constitutes "protected conduct" under the first step of the *Hutchins* test, the court explained that there must be a nexus between the "protected conduct" and the "in furtherance of" prong of a False Claims Act action. *Id.* at 187 (quoting *McKenzie*, 219 F.3d at 515) (internal marks and alterations omitted). "Determining what constitutes 'protected conduct' is a fact specific inquiry." *Id.* Although "employees need not actually file a False Claims Act suit to assert a cause of action under § 3730," *see id.*, "the whistleblower protections apply only to actions taken in furtherance of a *viable* False Claims Act case which has been, or is about to be filed." *Dookeran v. Mercy Hosp. of Pittsburgh*, 281 F.3d 105, 107 (3d Cir. 2002) (emphasis in original).

Regarding the second part of the *Hutchins* test, the court explained that "a plaintiff must show his employer had knowledge that he was engaged in 'protected conduct' and that the employer retaliated against him because of that conduct." *Hutchins*, 253 F.3d at 188. The court in *Hutchins* adopted a "formulation" requiring that under the knowledge prong, "the employee [must] put his employer on notice of the 'distinct possibility' of False Claims Act litigation." *Id.* (citations omitted). The court stated that this requirement is "essential" because unless an employer has notice of the "distinct possibility" of FCA litigation, "'there would be no basis to conclude that the employer harbored [§ 3730(h)'s] prohibited motivation [i.e., retaliation]." *Id.*

(quoting *Mann v. Olsten Certified Healthcare Corp.*, 49 F.Supp.2d 1307, 1314 (M.D.Ala. 1999) (alterations in original). The appropriate notice inquiry, the court stated, is:

> [w]hether the employee engaged in conduct from which a fact finder could reasonably conclude that the employer could have feared that the employee was contemplating filing a qui-tam action *against it or reporting the employer to the government for fraud.*... [L]itigation ... [is] a "distinct possibility" only if the evidence reasonably supports such fear; if the evidence does not support this fear, litigation would not have been a distinct possibility.

*Id.* at 188-189 (quoting *Mann*, 49 F.Supp.2d at 1314 and citing *McKenzie*, 219 F.3d at 514-15; *Yesudian*, 153 F.3d at 740; *Neal v. Honeywell Inc.*, 33 F.3d 860, 863-865 (7th Cir. 1994)[4] (alterations in original except for added emphasis); *see also Campion v. Northeast Utilities*, 598 F.Supp.2d 638 (M.D.Pa.2009) (quoting the same); *Odoms v. YMCA Bucks Cnty.*, 2013 WL 3213355, *4 (E.D.Pa. 2013) (quoting the same); *Sefen ex rel. United States v. Animas Corp.*, 2014 WL 2710957 (E.D.Pa. 2014) (dismissing the plaintiff's case because he failed to allege any connection to a false claim for payment against his employer, he did not establish he was discriminated against for protected conduct, and his employer was not on notice that he intended to file an action under the FCA).

Plaintiff has alleged that Defendants discharged him as a result of discovering that he filed an action as a whistleblower under the FCA against his previous and unrelated employer Cephalon. It is clear from Plaintiff's allegations that he was not investigating Defendants for fraud. Additionally, Plaintiff does not aver that Defendants and Cephalon are in any way related or that either exercised control over the other. Therefore, Defendants emphatically argue that Plaintiff's § 3730(h) claim against Defendants fails and must be dismissed. According to Defendants, liability under § 3730(h) only extends to the terminating employer if the employee was investigating the terminating employer, or if "the terminating employer is closely related to

---

[4] *Abrogated on other grounds by Graham Cnty. Soil & Water Conservation Dist. v. United States ex rel. Wilson,* 545 U.S. 409, 422 (2005).

and influenced by the employer of the other entity which the FCA complaint was made." (Def.s' Br. in Supp. at 7, ECF No. 17).

The court acknowledges that *Hutchins* cited cases and quoted language providing that the employer must be on notice of the distinct possibility of FCA litigation *against the terminating employer*. Indeed, as cited above, several district courts in this Circuit have reiterated this requirement. The court also notes that other appellate courts have made similar statements. *See, e.g., U.S. ex rel. Absher v. Momence Meadows Nursing Ctr., Inc.,* 764 F.3d 699, 715 (7th Cir. 2014) ("Although an employee need not have actual knowledge of the FCA, the employee must undertake the protected conduct with the actual and reasonable belief *that the employer* is committing fraud against the government.") (quotation omitted, emphasis added); *United States ex rel. Sanchez v. Lymphatx, Inc.*, 596 F.3d 1300, 1304 (11th Cir. 2010) ("If an employee's actions, as alleged in the complaint, are sufficient to support a reasonable conclusion *that the employer* could have feared being reported to the government for fraud or sued in a qui tam action by the employee, then the complaint states a claim for retaliatory discharge under § 3730(h).") (citations omitted, emphasis added). It is also undisputed that Plaintiff was not pursuing a *viable* FCA action against Defendants. *See Dookeran*, 281 F.3d at 107.

However, the court in *Hutchins*, noting that determining what activity constitutes protected conduct and whether the employer is on notice are both "intensely factual" inquires, summarized the factual background of several other reported cases. *See* 253 F.3d at 189-191. Notably, *Hutchins* and all of these cases that it analyzed involved a situation in which the employee was investigating the employer for committing fraud. *See Hutchins*, 253 F.3d at 179-180 (paralegal investigating its law firm employer for submitting inflated bills for approval by the U.S. Bankruptcy Court); *Neal*, 33 F.3d at 863-865 (employee alleging retaliation after

reporting to the employer's legal counsel that her co-workers were falsifying ammunition test data to the Army, which resulted in two of the company's employees pleading guilty to defrauding the United States and the employer entering a settlement totaling $2.5 million); *Yesudian*, 153 F.3d at 734-735 (employee investigating and complaining to supervisors about his employer's submission of false claims); *Hopkins v. Actions Inc. of Brazoria Cnty.*, 985 F.Supp. 706, 709-710 (S.D.Tex. 1997) (employee reporting employer for using Medicare funds to pay employer's payroll and bills and instructing its workers to forge signatures for Medicare reimbursement); *Robertson v. Bell Helicopter Textron, Inc.*, 32 F.3d 948 (5th Cir. 1994) (employee investigating his employer for overcharging the United States Government); *Mann*, 49 F.Supp.2d at 1310 (employee "calling attention to her employer's practice of submitting fraudulent or incorrect bills to Medicare"); *Zahodnick v. Int'l Bus. Machines Corp.*, 135 F.3d 911 (4th Cir. 1997) (employee reporting to supervisor that co-employees were overcharging the government for the amount time they spent working on projects); *McKenzie*, 219 F.3d at 511 (employee complaining to supervisors about employer falsifying trouble reports to avoid having to make refunds to the United States).

Therefore, it makes sense that *Hutchins* stated that as a "*general rule,*" these cases illustrate that a plaintiff bringing a claim under the anti-retaliation provision of the FCA must "prove that he engaged in 'protected conduct,' that is conduct in furtherance of a False Claims Act suit, and that his employer was on notice of the 'distinct possibility' of False Claims Act litigation and retaliated against him because of his 'protected conduct.'" 253 F.3d at 191 (emphasis added). But importantly, *Hutchins*, which repeatedly emphasized that courts must engage in "intensely factual" inquiries when analyzing § 3730(h), did not analyze or consider whether this anti-retaliation provision of the FCA applies to an employer that fires an employee

after discovering that the employee was engaging in protected activity under the FCA against a prior employer that is unrelated to the terminating employer.

Furthermore, all of the other above cases reiterating the requirement that the protected activity must be taken against the terminating employer likewise involved situations in which the employee was investigating the current employer for fraud. *See Campion*, 598 F.Supp.2d at 658 (employee reporting falsification of timesheets to employer);[5] *Odoms*, 2013 WL 3213355 at *1 (CEO investigating and reporting her employer's alleged misappropriation of federal funds to employer, its board of directors, and the defrauded party); *Sefen ex rel. United States v. Animas Corp.*, 2014 WL 2710957 at *1-2 (senior quality system analyst investigating its employers for falsely representing compliance with the FDA); *Absher*, 764 F.3d at 702 (nurses investigating their nursing home employer for falsely submitting claims to the Medicare and Medicaid programs); *Sanchez*, 596 F.3d at 1302-1304 (relator complaining to her employer about fraudulent Medicare-billing practices); *Dookeran,* 281 F.3d at 107-108 (doctor informing hospital administrators about alleged fraudulent application submitted by the hospital); *see also United States ex rel. Hefner v. Hackensack Univ. Med. Ctr.*, 495 F.3d 103, 111 (3d Cir.2007) (finding that regardless of whether relator's employer was construed to be consulting firm that hired relator or university medical center that retained the consulting firm, dismissal was appropriate for lack of evidence that the employer had the requisite knowledge that relator was engaged in protected activity).

---

[5]     Additionally, in *Campion*, the court found that the plaintiff had failed to sufficiently allege that he was an "employee" of his employer's parent and sister companies, stating that "courts in this circuit have limited application of § 3730(h) to 'the conventional master-servant relationship as understood by common-law agency doctrine.'" 589 F.Supp.2d at 654. As discussed above, however, after this case was decided, the class of plaintiffs was expanded by Congress in the 2009 FERA amendments and the 2010 Dodd-Frank Act amendments to also include contractors and agents, and the scope of protected activity was expanded to cover acts done by employees, contractors, agents, and associated others. *See* 31 U.S.C. § 3730(h)(1).

As such, the issue that is before this court was not contemplated or decided by any of the courts that Defendants cite or any of the court decisions addressed above. Indeed, under the facts of the all of those cases, the courts logically recognized that when an employee is engaging in protected activity *against his or her employer*, unless the employer has knowledge of this protected activity, it would not have harbored the prohibited retaliatory motivation. In contrast, the prohibited retaliatory motivation here is not derived from an investigation of fraud against the terminating employer. Rather, Plaintiff's theory is that the prohibited retaliatory motivation stems from Plaintiff engaging in protected conduct against Cephalon, and that Defendants retaliated against Plaintiff by discharging him after they became aware that he was engaged in this protected conduct. Further, because, as discussed below, the plaint text of § 3730(h)(1) does not impose a restriction that the protected activity of the employee must be taken against the terminating employer, the court declines to read the above cases to require the same when the issue was not before those courts. *See Webster v. Fall,* 266 U.S. 507, 511 (1925) ("Questions which merely lurk in the record, neither brought to the attention of the court nor ruled upon, are not to be considered as having been so decided as to constitute precedents.").

Moreover, the Court of Appeals for the Eighth Circuit recently evaluated whether "the FCA limits retaliation claims to those situations where the whistleblower's employer is actively involved in defrauding the government, rather than merely engaging in the retaliation." *Townsend v. Bayer Corp.*, 774 F.3d 446, 459 (8th Cir. Dec. 17, 2014), *reh'g denied* (Jan. 27, 2015). In *Townsend*, the plaintiff, a pharmaceutical sales representative, became aware that an important client of his employer was falsely submitting Medicaid claims, so the employee "sought guidance from his supervisors about what to do." 774 F.3d at 452. After not receiving a meaningful response from his supervisors, the plaintiff anonymously reported the misconduct to

the Arkansas Attorney General's Medicaid Fraud Hotline, which resulted in an investigation by various state and federal authorities and the client's office being raided by the government. *Id.* The client was then prosecuted and convicted for submitting false claims to the government, and the plaintiff cooperated fully with the government's investigation. *Id.* at 452-453. Plaintiff was subsequently terminated by his employer, and brought an action against the employer for violation of the anti-retaliation provision of § 3730(h)(1). As in the present case, the employer in *Townsend* was not alleged to have committed any of the underlying fraud.

In holding that the retaliating employer need not be accused of or involved in fraud for purposes of facing liability under § 3730(h)(1), the court in *Townsend* provided the following analysis:

> To determine whether the FCA limits retaliation claims to those situations where the whistleblower's employer is actively involved in defrauding the government, rather than merely engaging in the retaliation, we "first look to the language of the statute itself." *Diesel Mach.*, [*Inc. v. B.R. Lee Indus., Inc.*, 418 F.3d 820, 830 (8th Cir. 2005)] (citation omitted). "If the statutory language is unambiguous, our analysis need go no further and we simply apply the plain language of the statute." *Id.* at 831. The FCA is remedial in nature and thus we construe its provisions broadly to effectuate its purpose. *See Tcherepnin v. Knight*, 389 U.S. 332, 336, 88 S.Ct. 548, 19 L.Ed.2d 564 (1967).

> In order to invoke the anti-retaliation provisions of the FCA, the statute's plain language states "any employee, contractor, or agent [must not be] discharged, demoted, suspended, threatened, harassed, or in any other manner discriminated against in the terms and conditions of employment" for engaging in protected activity. 31 U.S.C. § 3730(h)(1). The words "protected activity" are not used in the FCA itself; this is a judicially-created phrase used to describe the conduct protected under the statute. There is no dispute, however, that the statutory language referred to as "protected activity" (at least for purposes of this case) is any "lawful acts done by the employee ... in furtherance of other efforts to stop 1 or more violations of this subchapter." 31 U.S.C. § 3730(h)(1) (effective March 23, 2010, to July 21, 2010).

> The statute thus includes employees among the class of persons who may bring an FCA retaliation suit, *but does not restrict the class of persons who may be violating the substantive provisions of the FCA to employers*. Instead, the statute broadly protects any lawful acts done by an employee to stop violations of

the FCA, and broadly prohibits the demotion, suspension, threatening, harassment, or other discrimination in the terms and conditions of employment against an employee for engaging in such lawful acts. Nothing in the plain language of the statute limits the protected "lawful acts" of an employee to efforts to stop *an employer's* violations of the FCA.

At least one court has specifically recognized the "statute ... contains no language requiring proof that the retaliation was for protected activity involving false claims by that same employer." *United States ex rel. Lang v. Nw. Univ.*, No. 04C3290, 2005 WL 670612, at *2 (N.D.Ill. Mar. 22, 2005); *see also Nguyen v. City of Cleveland*, 121 F.Supp.2d 643, 649 (N.D.Ohio 2000) (finding the FCA's retaliation provision "reaches an employer who discriminates against an employee" for reporting the false claims of a customer). As Townsend argues, an employer may retaliate against an employee for reporting the fraud committed by its important customers irrespective of (a) whether the employer itself is engaged in the fraud, or (b) whether the employer acts in concert with the customer to retaliate against the employee.

774 F.3d at 459-460 (footnote omitted, first emphasis added, second emphasis in original).

As Plaintiff observes, *Townsend* resolved the issue before it "by simply reading the statute." (Pl.'s Supplemental Br. at 4, ECF No. 25). Plaintiff notes that *Townsend* does not limit the plain language of § 3730(h)(1) to only protected activity directed at "closely related" entities, or entities which influence the defendant-employer. (*Id.*). The court acknowledges that the factual scenario in *Townsend* is not identical to the present case given that *Townsend* involved an employer taking action against an employee for reporting an "important client," and in this case the plaintiff took protected activity against a former employer, an entity completely unrelated to Defendants. Nonetheless, *Townsend's* analysis and broad interpretation of § 3730(h)(1) is directly applicable to this case. Contrary to Defendants assertion, § 3730(h)(1) does not provide that a plaintiff will only be covered by this provision if the terminating employer either (a) violated the FCA or (b) had a close relationship with or was influenced by the target of the investigation. (Def.s' Supplemental Br. at 3-4, ECF No. 26). Accordingly, imposing such a restriction, as Defendants demand, when it does not exist in the plain text of the statute would

result in an unduly narrow application of this statute.  Such an interpretation would also undercut the very purpose of the anti-retaliation provision – to protect persons who assist the discovery and prosecution of fraud.[6]  *See Schweizer*, 677 F.3d at 1237.

Additionally, Defendants' contention that unlike the defendant in *Townsend*, Defendants here had no motive to retaliate against Plaintiff must be rejected at this stage.  Defendants argue that they had no interest in Plaintiff "reporting the years-old fraudulent activity of his former employer, a *direct competitor* of Defendants," or "*covering up* the wrongdoing of their competitors."  (Def.s' Supplemental Br. at 3, ECF No. 26) (emphasis added).  As just discussed, however, *Townsend's* holding and interpretation of § 3730(h)(1) was not limited to the factual scenario before it.  Plaintiff appropriately asserts that *Townsend* "did not predicate liability on showing a particular motive for the non-target employer's desire to retaliate, and it just as surely did not cabin its holding to a showing of motivation caused by immediate monetary loss."  (Pl.'s Supplemental Br. at 5, ECF No. 25).

The reasonable inferences from the factual allegations in the amended complaint, which the court accepts as true for purposes of resolving this motion, lead to the conclusion that

---

[6]     Plaintiff's factual averments lead to a reasonable inference that when he was fired, he was still pursuing his *qui tam* action against Cephalon.  Similarly, a review of the public docket reveals that the action was ongoing at the time of Plaintiff's termination.  The action *United States ex rel. John Doe v. Cephalon, Inc.*, Civ. Action No. 1:10-cv-6457 was initiated in the Southern District of New York in August 2010, and in March 2014 it was transferred to the Eastern District of Pennsylvania, *Cestra v. Cephalon, Inc.*, Civil Action No. 2:14-cv-1842, where it is still an active case.  Thus, as Plaintiff was assisting the discovery and prosecution of fraud on behalf of the government at the time he was fired, Defendants' contention that "[t]he government's interest in rooting out fraud is in no way implicated here as Plaintiff has been prosecuting his action against Cephalon for years without any interference from Mylan," (Def.s' Reply Br. at 5, ECF No. 21), is without merit.  Similarly, their argument that "Plaintiff is asking that the Court extend the FCA to sanctify past whistleblowers in perpetuity and create potential FCA liability for downstream, subsequent, and unrelated employers against whom no FCA complaint was ever made," (Def.s' Br. in Supp at 7, ECF No. 17), is misplaced because he was actively engaging in protected activity when he was terminated by Defendants.  *See Townsend*, 774 F.3d at 458 (noting that cooperating in the investigation and prosecution *of the wrongdoer* constitutes conduct to be "in furtherance of efforts to stop" violations of the FCA under § 3730(h)(1)).

Defendants harbored the prohibited retaliatory motive in terminating Plaintiff. Plaintiff has provided detailed factual allegations that after it became publicized and known to Defendants that he was a relator in a *qui tam* suit against Cephalon, he continued to work at the same level as he had when he was rated as "exceeds expectations," but his supervisors started purposely avoiding him, treating him in a hostile manner, questioning him and being hypersensitive about specific statements that he made in meetings, and ultimately firing him, claiming he had issues with performance "over the last several weeks." As a result, Plaintiff has alleged sufficient factual content to infer that Defendants' alleged retaliation was motivated by Plaintiff engaging in the protected activity. Such factual disputes at this stage are resolved in favor of Plaintiff, not Defendants.

Therefore, Plaintiff has stated a prima facie cause of action under § 3730(h)(1). He has alleged sufficient facts for the court to infer that he (1) engaged in protected activity against Cephalon, and (2) Defendants fired him specifically because he engaged in the protected activity; that is, they knew he engaged in the protected activity and their retaliation was motivated by him engaging in the protected activity.[7] *See Hutchins*, 253 F.3d at 186. Through discovery, Defendants will have the opportunity to prove that their decision to fire Plaintiff was not motivated by the fact that Plaintiff engaged in protected activity against Cephalon, as they have argued. *See id.* (after the plaintiff establishes a prima facie case, "the burden shifts to the employer to prove the employee would have been terminated even if he had not engaged in the protected conduct"). But when considering Plaintiff's factual averments and plain text of § 3730(h)(1), dismissal of this action at the pleading stage would be premature and inappropriate.

---

[7] Consequently, it is unnecessary for the court to compare § 3730(h)(1) with Title VII's retaliation statute, 42 U.S.C. § 2000e-3(a), as Plaintiff has urged. (Pl.'s Br. in Opp'n at 12-14, ECF No. 20).

In their supplemental brief, Defendants also direct the court to a recent decision from the Southern District of Ohio, *Kem v. Bering Straits Info. Tech.*, 2014 WL 5448402 (S.D. Ohio Oct. 22, 2014). Defendants contend that this decision "reaffirmed the rule of law that a non-target employer cannot be liable for retaliation under the FCA where it is not influenced by the target employer or entity and there is no relationship between the two entities." (Def.s' Supplemental Br. at 4, ECF No. 26). This case, however, is inapposite, *inter alia*, because the legal theory and arguments presented by the plaintiff in that case are distinct from what Plaintiff has offered here. The court in *Kem* stated the following in footnote 2:

> The Court notes that Plaintiff does not allege or argue that his allegations should be interpreted in a different way: that BSIT fired him in retaliation for his conduct in previously blowing the whistle on a different contractor. Plaintiff does not offer any authority in which a court entertained such a claim. Plaintiff similarly does not argue that such a claim falls within § 3730(h)'s plain language. Moreover, the Complaint contains minimal factual support for Plaintiff's allegation that he "blew a whistle on over charging" and "received awards for saving the government millions of dollars in audits with previous defense contractor employers," (ECF No. 1 ¶ 11), such as whether he pursued a qui tam action against those contractors or prepared an internal report regarding suspected violations. The Court therefore will not address any such interpretation of Plaintiff's claim.

*Kem*, 2014 WL 5448402, at *4 n. 2. Unlike the plaintiff in *Kem*, Plaintiff here has alleged that Defendants fired him in retaliation for his protected conduct in previously filing a *qui tam* action against Cephalon and has argued that his claim falls within the plain language of § 3730(h)(1). Therefore, because *Kem* did not assess these issues, Defendants' citation to it is unpersuasive.[8]

Furthermore, several other courts have, in dicta, interpreted the plain text of § 3730(h)(1) to apply to unrelated employers. In addition to *Lang* and *Nguyen*, which were both cited by *Townsend supra*, Plaintiff has identified other cases recognizing the broad and encompassing language of § 3730(h). *See Hill v. Booz Allen Hamilton, Inc.*, 2009 WL 1620403, *4 n. 3

---

[8]     The court also notes that when *Kem* rendered its decision, it did not have the benefit of considering *Townsend*, which had not yet been decided.

(D.Guam 2009) ("In fact, the statutory language makes it fairly clear that the target of the FCA investigation may be an unrelated party."); *United States ex rel. Satalich v. City of Los Angeles*, 160 F.Supp2d 1092, 1107 (C.D.Cal. 2001) ("The language of the statute precludes *any employer* from retaliating against an employee for engaging in lawful actions that further an FCA claim or investigation, irrespective of whether it is the employer that is the target of the FCA investigation.") (emphasis in original);  *United States ex rel. Herrera v. Bon Secours Cottage Health Sys.*, 665 F.Supp.2d 782 (E.D.Mich. 2008) (granting the plaintiff's request for voluntary dismissal without prejudice but denying her motion for permanent seal, noting that "should Plaintiff-Relator be retaliated against by her current employer or *future employers* for filing this qui tam action, she … [may pursue] a cause of action" under § 3730(h)) (emphasis added); *United States ex. rel Littlewood v. King Pharmaceuticals, Inc.*, 806 F.Supp.2d 833, 841 (D.Md. 2011) (same).  Although the above courts did not actually consider the issue that is before this court, they all recognized the broad scope of the anti-retaliation provision of the FCA and the fact that the statute does not contain any limitation that the terminating employer be accused of or engaged in fraud, or that the employer be closely related or influenced by the target of the investigation.

The court will next address Defendants' remaining arguments regarding statutory interpretation and policy, all of which are unavailing given that the plain text of § 3730(h)(1) applies to Defendants' alleged conduct.  Defendants argue that they cannot be found liable because the 2009 FERA amendments sought to expand the definition of "employee" in the statute, but did not expand the definition of "employer."  (Def.s' Br. in Supp. at 11, ECF No. 17) (citing *United States ex rel. Black v. Am. Soc'y for Eng'g Educ.*, 2014 WL 1765337, at *6 (E.D. Pa. May 2, 2014) and *Aryai v. Forfeiture Support Assocs., LLC*, 25 F.Supp.3d 376 (S.D.N.Y.

2012)).  The cases cited by Defendants, however, dealt with whether defendants could be held liable in their individual capacities after the 2009 FERA amendments dropped the word "employer" from the statute.[9]  As Plaintiff has not sued any Defendants in their individual capacities, and because he brings this action against Defendants based upon their former relationship as employer-employee, which is covered under the FCA's anti-retaliation provision, this argument is without merit.

Additionally, the court rejects Defendants' attempt to rely on statutory interpretation for the proposition that because Congress is presumed to have knowledge of all prior interpretations of a statute when it amends a statute, when the 2009 FERA amendments occurred, "Congress left intact [various court] rulings placing limits on the potential defendants in a FCA retaliation suit." (Def.s' Br. in Supp. at 12-13, ECF No. 17).  This argument fails as an initial matter because, as discussed above, the anti-retaliation provision of the FCA is to be construed broadly and the plain text of the statute contains no such limitation requiring that the protected activity of the employee must be taken against the employer or by an entity closely related to or that exercises influence over the employer.  Furthermore, the cases upon which Defendants rely in asserting this argument do not support their position.  *See Nguyen*, 121 F.Supp.2d at 648 (stating that "[i]t is clear that [§ 3730(h)] extends to employers other than the employer at the time of the protected action who discriminate against employees" and holding "that § 3730(h) permits suits against an employer even if it did not employ the plaintiff at the time he took action protected by the FCA"); *Satalich*, 160 F.Supp.2d at 1107 ("The language of the statute precludes *any employer*

---

[9]    Courts that have addressed whether defendants may now be found liable in their individual capacities under § 3730(h)(1) after the 2009 FERA amendments are split on the issue.  *See, e.g., Laborde v. Rivera-Dueno*, 719 F.Supp.2d 198 (D.P.R. 2010) (yes); *Huang v. Rector & Visitors of Univ. of Va.*, 896 F.Supp.2d 524 (W.D.Va. 2012) (yes); *Aryai*, 25 F.Supp.3d 376 (no); *Black*, 2014 WL 1765337 (no); *Lampenfeld v. Pyramid Healthcare, Inc.*, 2015 WL 926154 (M.D.Pa. 2015) (no).

from retaliating against an employee for engaging in lawful actions that further an FCA claim or investigation, irrespective of whether it is the employer that is the target of the FCA investigation.") (emphasis in original); *United States ex rel. Karvelas*, *v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 237, 239 (1st Cir. 2004)[10] and *Machado v. Sanjurjo*, 559 F.Supp.2d 167, 177 (D.P.R. 2008) (statements by these courts that the employer must be submitting false or fraudulent claims to the federal government or be aware that the employee is investigating it for the same are inapplicable here because the employee in both cases was investigating the employer for such fraud). Consequently, this argument is rejected.

The Defendants also caution the court that if their motion is not granted, the court "stands to open the floodgates to potential FCA litigants," contending that such individuals "will obtain a lifetime of protection under [§ 3730(h)(1)] simply by alleging that a separate, unrelated entity was aware of her protected activity and took an adverse action against it." (Def.s' Br. in Supp. at 14-15, ECF No. 17). However, the facts averred in the amended complaint lead to a reasonable inference that Plaintiff was engaged in protected activity *at the time that he was fired*. Therefore, the court need not consider Defendants' argument that such hypothetical future plaintiffs may seek "lifetime protection" under § 3730(h)(1), as that issue is not before the court, and the statute plainly applies to Defendants' alleged conduct.

Defendants similarly contend that "[r]efusing to dismiss this claim also will have the perverse effect of encouraging employees to unveil the (real or imagined) FCA violations of past employers to their subsequent employers so that they are protected in the event of any adverse employment action." (*Id.* at 15). Specifically, Defendants contend that once the employer "unwillingly learns of the employee's whistleblowing … it must choose between continuing to

---

[10]     *Abrogated on other grounds by United States ex rel. Gagne v. City of Worcester,* 565 F.3d 40 (1st Cir. 2009).

employ an employee it may no longer need or want, or risk becoming the defendant in a lawsuit for violating the FCA's anti-retaliation provision … regardless of whether that employer has even run afoul of the FCA or has been accused of doing so." (*Id.*). But in this case, Plaintiff has pled detailed allegations which allow the court to infer that Defendants fired him specifically because he was engaging in protected activity as a whistleblower under the FCA against Cephalon. Because Plaintiff stated a claim under § 3730(h)(1), the court need not theorize what other hypothetical whistleblowers may possibly do in the event that they are facing adverse employment action by a subsequent employer.

Defendants are also concerned of a potential "chilling effect on the ability of FCA whistleblowers to obtain future employment once their FCA complaint is unsealed." (*Id.*). Again, this situation is not before the court because Plaintiff is not suing Defendants as an applicant. He is suing Defendants based on their previous employer-employee relationship, which is specifically covered under § 3730(h)(1). Thus, whether § 3730(h)(1) applies to applicants is irrelevant to this case.[11] Moreover, even assuming *arguendo* that § 3730(h)(1) does not extend to applicants, this policy argument belies common sense. It would be utterly absurd to find that employers should not face liability for firing actual employees engaged in protected activity under the FCA at or near the time of termination based on public policy grounds that hypothetical FCA whistleblowers may have difficulty finding future employment.

Finally, Defendants have alternatively requested that the court strike various allegations contained in the amended complaint at paragraphs 32 - 37. (*Id.* at 16). These allegations provide

---

[11] In their briefs, the parties disagree as to whether § 3730(h)(1) applies to applicants. The court notes that Defendants cite *Vander Boegh v. EnergySolutions*, 772 F.3d 1056 (6th Cir. Nov. 18, 2014), which held that § 3730(h)(1) does not apply to applicants because the term employee in § 3730(h)(1) is limited to employment-like relationships. 772 F.3d at 1064. Although Defendants contend that this decision supports their public policy rationale, the court's analysis was based on statutory interpretation, legislative history, and assessment of case law. The court did not find that applicants are prohibited from recovery under § 3730(h)(1) based on public policy grounds.

that after Plaintiff was identified as a whistleblower, he was questioned by supervisors about whether he previously made statements that Mylan paid the FDA for approval of one of its products. (Am. Compl. ¶ 32, ECF No. 9). Plaintiff responded that he did not accuse Mylan of paying for FDA approval, but rather that he stated that Mylan paid a "fee" to the FDA for expedited review, which is legitimate and customary in the industry. (*Id.* at ¶ 33). Plaintiff contends that these allegations are proper because they "further illustrate Defendants' hostility and hypersensitivity toward Cestra." (Pl.'s Br. in Opp'n at 20-21, ECF No. 20). Additionally, Defendants seek to strike allegations that Plaintiff was fired after Defendants learned that Plaintiff had discussed a "sensitive issue in a meeting for the purposes of 'problem solving'" relating to an agreement between the company that developed Defendants' device and a third-party pharmaceutical company. (Am. Compl. at ¶¶ 34-37, ECF No. 9). Plaintiff argues that "[t]hese allegations go to the heart of [his amended] complaint – that Defendants fired him because he is a whistle blower, in violation of Section 3730(h)." (Pl.'s Br. in Opp'n at 21, ECF No. 20).

The court agrees with Plaintiff and finds that these allegations are not "redundant immaterial, impertinent, or scandalous." *See* Fed. R. Civ. P. 12(f). Additionally, these allegations "could possibly serve to achieve a better understanding of plaintiff's claims," *see Eisai*, 629 F.Supp.2d at 425, as Plaintiff has explained above. While the court understands Defendants' desire to have these allegations stricken, Plaintiff has asserted that they are not meant to disparage or embarrass Defendants and that they are not immaterial or irrelevant to this action, explaining that the allegations are "central" to his claim "because they explain the impetus behind Defendants' decision to fire Cestra." (Pl.'s Br. in Opp'n at 20, ECF No. 20). Indeed, these allegations support Plaintiff's claim that after he was identified as a whistleblower,

Defendants began treating him differently despite his consistently high performance, and said allegations provide context relating to Plaintiff's termination. As a result, Defendants' alternative motion to strike these allegations should be denied.

## V.    CONCLUSION

Based on the foregoing, it is respectfully recommended that Defendants' motion to dismiss, and in the alternative, motion to strike (ECF No. 16) be denied.

In accordance with the Magistrates Act, 28 U.S.C. § 636(b)(1)(B) and (C), and the Local Rules for Magistrates, the parties have until <u>April 20, 2015</u>, to file objections to this report and recommendation. Failure to file timely objections will constitute a waiver of any appellate rights. *Brightwell v. Lehman*, 637 F.3d 187, 193 n. 7 (3d Cir. 2011).

Dated: <u>April, 6, 2015.</u>                                   By the Court,

                                                                                    <u>s/ Cynthia Reed Eddy</u>
                                                                                    Cynthia Reed Eddy
                                                                                    United States Magistrate Judge

cc: Counsel of Record via CM-ECF